UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KIMBERLY McMANUS,

    Plaintiff,

v.                                                        CAUSE NO. 3:18-CV-746 DRL-MGG

SAINT MARY'S COLLEGE,

    Defendant.

OPINION AND ORDER

The Family Medical Leave Act (FMLA) entitles an eligible employee to as many as twelve weeks of unpaid leave during any twelve-month period if the employee has a serious health condition that prevents the employee from being able to perform the functions of her position. 29 U.S.C. § 2612(a)(1)(D). When Ms. Kimberly McManus returned to work after FMLA leave, she provided her employer, Saint Mary's College, with a release authorizing her return to work, albeit with certain restrictions. To accommodate these restrictions, Saint Mary's created a new administrative assistant position for her. By not immediately returning her to her former position, Ms. McManus alleges that Saint Mary's interfered with her FMLA rights.

On September 26, 2019, Saint Mary's filed a summary judgment motion pursuant to Fed. R. Civ. P. 56. This presiding judge, having been reassigned to the case, held oral argument on December 19, 2019. After reviewing the parties' briefs and arguments advanced at oral argument—the quality of which the court commends both counsel—the court grants Saint Mary's motion for summary judgment.

1

BACKGROUND

Ms. McManus began her employment with Saint Mary's College on December 22, 2015 as an administrative assistant in the department of information technology (IT). ECF 25-3 at 57:18, 58:19.

On Thursday, May 25, 2017, Ms. McManus spent the workday at home sick. *Id.* at 69:19. That same day, the director of human resources for Saint Mary's, Kris Urschel, called Ms. McManus at her home and asked her to report to Ms. Urschel's office on Friday morning. *Id.* at 69:19, 85:5. The purpose of the meeting was to discuss a recent complaint Ms. McManus made to the assistant of the president, Kara Kelly, about Ms. McManus' manager, Michael Boehm, and his placement of financial orders she felt were unapproved. *Id.* at 70:1-15; 128:15-22; 130:1-8.

On Friday morning, Ms. McManus met with Ms. Urschel for 2.5-3.0 hours then returned to the IT department. *Id.* at 68:18-25. Ms. McManus had an altercation with her manager, Mr. Boehm, and was "scared for [her] life" and felt that her "life and safety were in jeopardy." *Id.* at 68; 70:16-25; 71:1-6. She communicated this incident to Ms. Urschel by phone multiple times that day and left shortly thereafter. *Id.* at 68:18-25; 71:6. Later that evening of May 26, Ms. McManus began feeling physical symptoms of a chronic illness. ECF 25-3 at 71:7-20.

Ms. McManus first notified Ms. Urschel and Mr. Boehm of her need to take FMLA leave by text message over Memorial Day weekend, May 28-29, 2017. ECF 25-3 at 67:9-68:10. She completed a leave of absence form, and Saint Mary's provided her with a FMLA notice and certification forms. ECF 25-1 ¶ 17; ECF 25-1 (group Ex. C) (Leave of Absence). Her FMLA leave was initially approved indefinitely. ECF 25-3 at 77:14-17.

After several back and forth communications between Ms. McManus and Saint Mary's, Ms. McManus' physician, Dr. Isaacson, signed a return to work form for Ms. McManus on August 3, 2017, which included eight restrictions. ECF 25-3 at 83:5-16; ECF 25-1 at 128 (Group Ex. C) (Return to Work). These restrictions included: (1) flexible schedule; (2) ergonomic work station; (3) no lifting of

objects above 30 pounds; (4) avoid stress; (5) allow extended lunch breaks; (6) access to carts; (7) restricted diet; and (8) supportive shoes. ECF 25-1 at 128. On August 4, 2017 (Friday), Ms. McManus met with Ms. Urschel to discuss her return to work and to provide Ms. Urschel with her paperwork from Dr. Isaacson. ECF 25-3 at 88-85. At the meeting, Ms. Urschel discussed Ms. McManus' return to work with restrictions, specifically the "avoid stress" restriction. *Id.* at 85-86.

During that meeting, Ms. Urschel and Ms. McManus agreed to move Ms. McManus out of the IT department to help avoid stress. ECF 25-3 at 87:9-12. In a follow up email on August 6 (Sunday), Ms. McManus wrote: "During our meeting last Friday and again in email you said that I would not be returning to the Information Technology department and I not only agreed with you I said that I understood why given the circumstances reported on May 26, 2017." *Id.* at 111. When Saint Mary's sought clarification from Dr. Isaacson about what the "avoid stress" restriction entailed, Dr. Isaacson replied that Ms. McManus should "avoid stressful situations as much as possible," and deferred to "what Ms. McManus perceives as stress—physical-emotional." ECF 25-1 at 126, 127.

About a week later, Ms. Urschel sent a letter to Ms. McManus confirming that Ms. McManus would be moved out of the IT department to "avoid stress" and would be moved into an administrative assistant position in the graduate studies program. ECF 25-1 at 143. This position was created for Ms. McManus to support the director of admissions, Melissa Fruscione, who did not have administrative support. *Id.* at 7 ¶34. Ms. McManus and Ms. Urschel met on August 10 to discuss the letter confirming this new role. *Id.* ¶37. That same day, Ms. McManus returned to work in her new role as administrative assistant in the graduate studies program. *Id.;* ECF 25-3 at 93:23-94:10.

Ms. McManus resigned via email on Monday, September 18, 2017. ECF 25-1 at 168. In her email, she says she "was given and required to complete tasks outside and beyond the scope of [her] original job description," and that the tasks she was asked to complete "added unnecessary stress to [her] chronic health condition." *Id.*

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in her favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must deny a summary judgment motion when there is admissible evidence that creates a genuine issue of material fact—a triable issue. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

The court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

DISCUSSION

The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of FMLA rights. 29 U.S.C. § 2615(a)(1); *James v. Hyatt Regency Chi.*, 707 F.3d 775, 780 (7th Cir. 2013). Under the FMLA, there are two basic claims: interference and retaliation. *Riley v. City of Kokomo,* 909 F.3d 182, 188 (7th Cir. 2018). To establish a FMLA interference claim, an employee must prove that (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied FMLA benefits to which she was entitled. *Ridings v. Riverside Med. Ctr.,* 537 F.3d 755, 761 (7th Cir. 2008).

Saint Mary's argues that summary judgment should be granted because the college provided Ms. McManus with all the medical leave she requested and accommodated all restrictions with which she was released to work. ECF 25 at 6. Ms. McManus responds by claiming that Saint Mary's violated her FMLA rights by (1) not complying with notice requirements under 29 C.F.R. § 825.300; (2) delaying her return to work after her FMLA leave and reinstating her to a non-equivalent position; (3) not compensating her for a 30-60 minute meeting on August 4, 2017, forcing her to use FMLA leave; and (4) constructively discharging her as a result of her using FMLA leave. ECF 26 at 12-22. The court takes up each alleged FMLA violation in turn.

  A. *Saint Mary's Provided Ms. McManus the Notice Required under the FMLA.*

Ms. McManus argues that Saint Mary's failed to notify her that her return to work after FMLA leave could be delayed due to work restrictions. ECF 26 at 12. Saint Mary's asserts that this claim is waived because Ms. McManus did not advance the argument in her complaint. *Cf. Abuelyaman v. Ill. State Univ.,* 667 F.3d 800, 814 (7th Cir. 2011) ("a plaintiff may not advance a new argument in response to a summary judgment motion"). Even so, the claim cannot withstand summary judgment.

Under 29 C.F.R. § 825.300(c)(1), "employers shall provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." Failure to follow these notice requirements may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights. 29 C.F.R. § 825.300(e). Specifically, there are seven categories of information to be shared with employees, if they are "appropriate," none of which include notifying employees about providing an unconditional release to return to work or the consequences thereafter. Such specific notice must include, as appropriate:

  (i) That the leave may be designated and counted against the employee's annual FMLA leave entitlement . . .

  (ii) Any requirements for the employee to furnish certification of a serious health condition, serious injury or illness, or qualifying exigency arising out of covered

5

> active duty or call to covered active duty status, and the consequences of failing to do so . . .
>
> (iii)  The employee's right to substitute paid leave . . .
>
> (iv)  Any requirement for the employee to make any premium payments to maintain health benefits and the arrangements for making such payments . . .
>
> (v)  The employee's status as a key employee and the potential consequence that restoration may be denied following FMLA leave . . .
>
> (vi)  The employee's rights to maintenance of benefits during the FMLA leave and restoration to the same or an equivalent job upon return from FMLA leave . . .; and
>
> (vii)  The employee's potential liability for payment of health insurance premiums.

29 C.F.R. § 825.300(c)(1)(i-vii). Aside from these requirements, the "notice of rights and responsibilities *may* include other information—e.g., whether the employer will require periodic reports of the employee's status and intent to return to work—but is not required to do so." 29 C.F.R. § 825.300(c)(2) (emphasis added). An employer may only be liable for interference if it fails "to follow the notice requirements set forth in this section." 29 C.F.R. § 825.300(e). In other words, failure to provide additional notice, above and beyond what is enumerated in § 825.300, does not constitute interference under the FMLA.

Ms. McManus does not dispute that she received a "Leave Request Form," "Notice of Eligibility and Rights & Responsibilities," and "Certification of Health Care Provider." ECF 25-1 at 97. The Rights & Responsibilities notice provided the information required by 29 C.F.R. §§ 825.300(b), (c). The notice is a form document provided by the U.S. Wage and Hour Division; it specifically says "Part B provides employees with information regarding their rights and responsibilities for taking FMLA leave, as required by 29 C.F.R. § 825.300(b), (c)." ECF 25-1 at 97. The form proceeds as a checklist matching the applicable language of the FMLA notice requirements regulation, *see* 29 C.F.R. § 825.300(c)(1)(i-vii), and providing Ms. McManus all the notice required by statute. By their express language, the regulations don't require an employer to inform an employee of every conceivable

6

wrinkle in the process. *See Norris v. Allison Transmission, Inc.,* No. 1:13-cv-01287, 2015 U.S. Dist. LEXIS 10936, 22 n.5 (S.D. Ind. Jan. 30, 2015).

The cases Ms. McManus cites do not alter this analysis. *See Monroe v. Sisters of Saint Francis Health Servs., Inc.,* No. 2:09-cv-411, 2012 U.S. Dist. LEXIS 95878, 16 (N.D. Ind. July 11, 2012) (Rodovich, J.) (employer violates its duty to provide notice if it fails to provide designation notice, which is specifically enumerated in 29 C.F.R. § 825.300(d)(1)); *Armfield v. Key Plastics, LLC,* No. 1:08-cv-110, 2011 U.S. Dist. LEXIS 80482, 25 (N.D. Ind. July 22, 2011) (Moody, J.) (denying summary judgment to employer for its failure to inform employee of his obligations under an enumerated requirement found in 29 C.F.R. § 825.300 related to medical certification, not return to work releases); *Schober v. SMC Pneumatics, Inc.,* No. IP 99-1285-C, 2000 U.S. Dist. LEXIS 19088, 20 (S.D. Ind. Dec. 4, 2000) (Tinder, J.) (employer violates its duties to provide notice if it provides misleading or incorrect information to an employee).

Even if not statutorily required, the information Saint Mary's provided Ms. McManus was enough for employees to understand that failure to provide the college with a return to work clearance would delay return to their former position. In a letter dated July 25, 2017, a human resources specialist for Saint Mary's sent a letter to Ms. McManus informing her that "[i]n order to return to work, it is necessary for us to receive a release from your physician." ECF 25-1 at 122. Further, the Saint Mary's handbook provides that employees returning to work after five days or more will "be required to provide a doctor's statement which states that the employee is medically cleared to return to work." ECF 25-1 at 63. Such notice adequately advised Ms. McManus of the expectations and obligations under the FMLA (a release), and the consequence for not meeting that obligation (preventing a return to work). *See* 29 C.F.R. § 825.300(c)(1). It is no stretch to understand that work restrictions would slow any return to work if her failure to supply a full release could prevent it altogether.

Ms. McManus provided a doctor's note that included a key restriction that would prevent her from returning to her former position—avoid stress. Even she recognized this restriction affected her ability to return to the IT department. Under 29 C.F.R. § 825.300, Saint Mary's provided Ms. McManus with the proper FMLA notice regarding her return. Summary judgment is thus warranted on this alleged FMLA violation.

B. *Ms. McManus Has Not Established that Saint Mary's Violated Her FMLA Rights by Meeting with Her on August 4, 2017.*

Ms. McManus next argues that Saint Mary's interfered with her FMLA leave by requiring her to attend a 30-60 minute meeting on August 4, 2017 with Ms. Urschel. ECF 26 at 20. She says the college's "failure to compensate [her] for the meeting and to instead count the time spent by [her] against the limited amount of FMLA leave to which she was entitled is further evidence of unlawful interference." *Id.* Saint Mary's responds that Ms. McManus waived this argument by not asserting it in her complaint. *See Abuelyaman,* 667 F.3d at 814. The court tends to agree, but summary judgment is warranted on the merits of the claim regardless.

Under 29 C.F.R. § 825.311(a), "[a]n employer may require an employee on FMLA leave to report periodically on the employee's status and intent to return to work." *Daugherty v. Wabash Ctr., Inc.,* 577 F.3d 747, 751 (7th Cir. 2009). *Daugherty* held that requiring an employee to turn over keys and passwords while on FMLA leave was "no more intrusive than the requirement to keep the employer informed about the status of medical leave, *see* 29 C.F.R. § 825.311(a), or otherwise comply with customary employer rules regarding notice." *Id.* Courts assess periodic reporting requirements by considering whether the employer's contacts with the employee were *de minimis* or whether, in reality, they benefitted the company. "[T]here is no right in the FMLA to be 'left alone' or be completely relieved from responding to an employer's discrete inquiries." *O'Donnell v. Passport Health Commc'ns, Inc.,* 561 F. App'x 212, 218 (3d Cir. 2014); *accord Sabourin v. Univ. of Utah,* 676 F.3d 950, 961 (10th Cir.

2012) ("University's request for materials from [the employee] was not an impermissible demand for work during FMLA leave [but] was a request for a modest, unburdensome effort to enable [the employee's] work to be performed while he was on leave."); *Kesler v. Barris, Sott, Denn & Driker, P.L.L.C.*, 482 F. Supp. 2d 886, 910-11 (E.D. Mich. 2007) (occasional phone calls inquiring about files do not qualify as interference with FMLA leave); *Reich v. Midwest Plastic Eng'g, Inc.*, No. 1:94-CV-525, 1995 U.S. Dist. LEXIS 12130, 13 (W.D. Mich. July 22, 1995) (employer was permitted to require employee to report periodically on her status and intent to return to work, including by having the employee bring in a doctor's slip verifying her condition).

In this case, Ms. Urschel's meeting with Ms. McManus on August 4 was *de minimis*, and it was solely for the purpose of discussing Ms. McManus' return to work. While there is some disagreement as to who requested the meeting, this dispute is immaterial. Here, Ms. McManus and Ms. Urschel only met for 30-60 minutes to discuss Ms. McManus' return to work. The meeting was as much for Ms. McManus' benefit to facilitate her return to work under the restrictions imposed by her physician. Thus, Saint Mary's is entitled to summary judgment on this interference claim.

   C. *Due to Her Restrictions, Ms. McManus was not Entitled to Immediate Reinstatement to Her Former Position.*

When Ms. McManus attempted to return to work after FMLA leave, she provided Saint Mary's with a release form signed by her physician that included eight restrictions. One of those restrictions required Ms. McManus to "avoid stress." In the past, she had associated the IT department with her stress. For that reason, Ms. McManus was not reinstated to the IT department upon her return. Instead, Saint Mary's took approximately five days, during which Ms. McManus used more FMLA leave, to find Ms. McManus another position. After this time, Ms. McManus resumed work, but in a new position as an administrative assistant for the graduate studies program.

Ms. McManus argues that "it is undisputed that [her] return to work following her FMLA leave was delayed by several days following Defendant's receipt of a release from [her] health care

provider." ECF 26 at 15-16. According to Ms. McManus, "[s]uch an action constitutes an unlawful interference with [her] FMLA rights." *Id.* at 15. She claims that she has "set forth multiple genuine issues of material fact on the issues of whether Defendant's failure to restore her to the same position she held when her leave commenced was lawful and whether the alternate position to which she was assigned was an equivalent position." *Id.* at 19.

An employee returning from FMLA leave "shall be entitled . . . to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an "equivalent position." 29 U.S.C. §§ 2614(a)(1)(A), (B). Courts have interpreted this reinstatement to be required immediately upon return, and not within a reasonable time. *See Hoge v. Honda of Am. Mfg.,* 384 F.3d 238, 247 (6th Cir. 2004) ("The plain meaning of 'on return from such leave' is not ambiguous and, contrary to [the defendant's] argument, will not be construed to mean 'within a reasonable time after the employee is able to return from such leave.'"); *see also Carter v. Chi. State Univ.,* No. 10-C-321, 2013 U.S. Dist. LEXIS 107783, 19 (N.D. Ill. Aug. 1, 2013) (rejecting argument that delay of an employee's restoration after returning from FMLA leave could be for a reasonable time).

That said, an employee's right to reinstatement is not absolute. If an employee returning from FMLA leave cannot perform an essential function of her original position, due to either a mental or physical condition, the employee has no right to restoration.[1] 29 C.F.R. § 825.216(c); *James,* 707 F.3d at 781 ("employer has no duty under the FMLA to return an employee to his or her position, if that employee cannot perform an essential function of the job"); *see also Hendricks v. Compass Grp., USA, Inc.,* 496 F.3d 803, 806 (7th Cir. 2007). Thus, the issue here is whether Ms. McManus could perform

---

[1] An employer's obligations may be governed by the Americans with Disabilities Act, state leave laws, or workers' compensation laws, 29 C.F.R. § 825.216(c), but Ms. McManus does not allege any claims under these laws. In addition, whatever seeming variance between the statute and regulation, *cf.* 29 U.S.C. §§ 2614(a)(1)(A), (B) *and* 29 C.F.R. § 825.216(c), both parties agree that 29 C.F.R. § 825.216(c) qualifies an employee's right to reinstatement under 29 U.S.C. §§ 2614(a)(1)(A), (B). ECF 28 at 5; Tr. 14-16, 18 (Dec. 19, 2019); and no party advocates for anything than full deference to the regulation.

10

the essential functions of her IT job upon her return from FMLA leave, appreciating that she was released with eight restrictions.

In *James,* 707 F.3d at 781, an employee returning from FMLA leave complained that his employer did not promptly reinstate him to his position after he submitted a doctor's note releasing him to "light duty." The doctor's note did not specify when the "light duty" restriction would be lifted. *Id.* This circuit, citing *Hendricks,* 496 F.3d at 805, said there is no such thing as FMLA light duty. If an employee cannot perform the essential functions of the job, the employer is under no obligation to restore the employee to his or her position. *Id.*

In this case, Ms. McManus was allowed to return to work, but conditionally with restrictions: a flexible schedule to attend appointments, an ergonomic workstation, lifting constraint, the requirement to avoid stress, extended lunch breaks, access to lifting devices, restricted diet, and supportive shoes. ECF 25-1 at 143. Similar to the employee in *James*, Ms. McManus' release did not specify when the restrictions would be lifted; in fact, the restrictions were never lifted on this record. ECF 25-1 at 9.

In short, if "stress" was part of the essential functions of Ms. McManus' role in the IT department, then she was not entitled to reinstatement, as her return would be considered the ostensible equivalent of "light duty" in *James,* 707 F.3d at 781. Ms. McManus testified that her duties included managing her supervisor's calendar; scheduling meetings and job interviews; working with vendors; processing purchasing requests; answering the phone; balancing IT's budget; and submitting receipts. ECF 25-3 at 61-62, 66. She was required to be in constant communication with members of the IT department. *Id.* at 60. The job description of her administrative position described her responsibilities as "efficient application of secretarial skills, a moderate degree of decision-making, initiative, and independence of action . . . . Communicate clearly, both orally and in writing, on the telephone, and in person. Work with others in a team environment." ECF 25-1 at 157. Undoubtedly,

11

a position like this would require the employee to undergo a moderate level of stress. Other courts have held the same. *See Mayo v. PCC Structurals, Inc.,* 795 F.3d 941, 944 (9th Cir. 2015) ("An essential function of almost every job is the ability to handle stress and interact with others."); *Williams v. Motorola, Inc.,* 303 F.3d 1284, 1290 (11th Cir. 2002) ("An employee's ability to handle reasonably necessary stress and work reasonably well with others are essential functions of any position.").

But most telling, Ms. McManus attributed above-normal stress to the IT department; and, at least in part, stress was the reason Ms. McManus used FMLA leave in the first place. On May 26, 2017, when Ms. McManus returned to work after a meeting with Ms. Urschel, Mr. Boehm (her boss) allegedly confronted Ms. McManus in a way that she perceived to be threatening. ECF 25-3 at 70-71. That evening she experienced physical symptoms, which she at least partially attributed to aggravated stress from the department. *Id.* at 72-73. When asked if she was under a significant amount of stress in the IT department leading up to her leave of absence, Ms. McManus said "yes." *Id.* This stress led Dr. Isaacson to include in Ms. McManus' return to work release a restriction to "avoid stress."

Ms. Urschel met with Ms. McManus on August 4, 2017 to discuss the restrictions imposed by Dr. Isaacson. ECF 25-1 at 6. Ms. Urschel asked Ms. McManus what she felt would be a reasonable accommodation for her to avoid stress. *Id.* According to Ms. Urschel, they agreed that reinstating her to her position in IT did not comply with the restriction that she "avoid stress" and that reassigning her to a position outside of IT would allow her to return to work. *Id.* These discussions were partially relayed via email after the meeting. Ms. Urschel, in responding to an email from Ms. McManus, stated "Certainly, we cannot put you back into IT per our recent discussion." *Id.* In her reply, Ms. McManus confirmed Ms. Urschel's description of what was discussed at the meeting: "As I mentioned in our meeting on Friday last week, the 'stress' listed as part of my restrictions was directly related to the hostile and threatening incident that occurred on May 26, 2017 . . . . During our meeting last Friday

12

and again in email you said that I would not be returning to the Information Technology department and I not only agreed with you I said that I understood why given the circumstances." *Id.* at 139.

Ms. McManus testified to the same. When asked what specifically it was that Ms. Urschel wanted clarification on during the August 4 meeting, Ms. McManus said, "[Ms. Urschel] did not like the term 'avoid stress' . . . [as] it made the college liable." ECF 25-3 at 85-89. Ms. McManus then confirmed their agreement to move her out of the IT department. *Id.* ("Q: And during that conversation did you and Kris Urschel agree that moving you out of the IT department would help reduce your stress? A: Yes."). Ms. McManus explained in part why moving her out of the IT department would help reduce her stress: "I explained what caused my stress. It was the fact that my safety was threatened on multiple occasions by my former boss, who was let go of that—from that employer. So I received threatening mail through the United States Postal Service . . . I agreed that perhaps my safety would be in jeopardy in the IT department." *Id.*

Ms. McManus' job responsibilities were not solely tied to assisting her former boss, Mr. Boehm, but included supporting three directors and other computer support specialists. *Id.* at 60. Accordingly, she attributed her stress to working in the department *writ large*, not just for Mr. Boehm. *See id.* at 72 ("Q: Is it fair to say that in those days and weeks leading up to your leave of absence that you were under a significant amount of stress in the IT department? A: Yes."). In her words, "I believed that taking me out of that role could help reduce stress not knowing of the potential retaliation that I incurred even being outside of that department from my colleagues in the IT department." *Id.* at 89. In fact, when Ms. McManus returned to work from her FMLA leave, Ms. Urschel placed a restriction on Ms. McManus from communicating or contacting any one in the IT department: a further testament to Ms. McManus' problems with the IT department at large. *Id.* at 88. Ms. McManus had complained in the past to Ms. Urschel about the way orders in the IT department were processed without her approval or knowledge of senior members of the college. *Id.* at 130. While

13

it seems Mr. Boehm aggravated her stress levels, Ms. McManus was not comfortable working in the IT department with her other colleagues or under the conditions in which that department worked. Had she continued to work in the IT department, she would have been exposed to ongoing levels of stress consistent with her job description and contrary to her doctor's restrictions.

On this record, no reasonable jury could conclude that stress was not an essential function of her IT job—particularly when it came to working with other members of the IT department—or that she could return to that role given her doctor's restrictions. When Dr. Isaacson wrote to Saint Mary's in response to its request for clarification of Ms. McManus' restrictions, Dr. Isaacson stated: "it is requested that [Ms. McManus] avoid stressful situations as much as possible as anxiety increases her pain." ECF 25-1 at 125. Before that, Dr. Isaacson made a note next to the "avoid stress" restriction on Ms. McManus' return to work form, which said that "avoid stress" refers to "what Mrs. McManus perceives as stress—physical—emotional." ECF 25-1 at 127. She indisputably perceived the IT department as a source of her stress; and thus, she would not be able to perform the essential functions of her job if she returned to the IT department.

Due to the eight restrictions, and specifically the restriction to "avoid stress," Ms. McManus was not able to return to her former job. *See James,* 707 F.3d at 781. Under the FMLA, an employer is not required to reinstate an employee who is returned under light duty immediately. *See id.* Ms. McManus thus had the option of continuing on unpaid FMLA leave until the restrictions were lifted or accepting light duty work. *See Hendricks,* 496 F.3d at 805 ("Under some workers' compensation programs, however, a health care provider may certify that an employee is able to return to 'light duty' work, and an employee is free to accept that light duty work or continue on unpaid FMLA leave."). On that basis, Saint Mary's delay in reinstating Ms. McManus to her administrative position in the IT department was less a delay as it was Saint Mary's providing greater rights to Ms. McManus than the

FMLA required. Saint Mary's did not have to find her a new position under the FMLA but did so reasonably to accommodate her situation.

Ms. McManus goes on to argue that she was returned to a new position, not "equivalent" to her prior position. But before the court would need to analyze whether the graduate studies position was equivalent to the position in the IT department under 29 C.F.R. § 825.214, Ms. McManus would have to show that she was entitled to reinstatement. 29 C.F.R. § 825.216 ("Limitations on an employee's right to reinstatement"). She has failed to do so because her return was subject to eight restrictions.

In an attempt to prevent this outcome, Ms. McManus argues that she was unlawfully induced into accepting a new position upon her return from FMLA. Under 29 C.F.R. § 825.215, "FMLA does not prohibit an employer from accommodating an employee's request to be restored to a different shift, schedule, or position which better suits the employee's personal needs on return from leave . . . but, an employee cannot be induced by the employer to accept a different position against the employee's wishes." Inducement is only relevant when an employee shows that she can perform the essential functions of her previous job and was entitled to immediate reinstatement. 29 C.F.R. § 825.214 (describing an employee's right to reinstatement upon return from FMLA to her previous position or "equivalent position"); *id.* § 825.215(e) (prohibiting inducement under the definition of "equivalent terms and conditions of employment"); *id.* § 825.216 (limiting an employee's right to reinstatement if employee is unable to perform an essential function of the position). Again, this argument gains no traction because Ms. McManus cannot show that she was entitled to full reinstatement; and, in any event, a claim of inducement is not supported on this record of mutual agreement to the alternative position.

Last, most courts have said that an involuntary-leave claim (*i.e.,* being forced to take FMLA leave even though the employee was working or entitled to work) requires the employee to show that

the employee's FMLA leave was exhausted before claiming interference. *See Huffman v. Speedway LLC*, 621 Fed. App'x 792, 797 (6th Cir. 2015) ("We nonetheless recognize that involuntary FMLA leave has the potential to indirectly interfere with an employee's FMLA rights . . . . [but] an involuntary-leave interference claim 'ripens *only* when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past.'"); *Cozad v. Ill. Dep't of Corr.*, No. 4:16-cv-4131, 2018 U.S. Dist. LEXIS 226466, 15 (C.D. Ill. Apr. 17, 2018) ("placing an eligible employee with a serious health condition on FMLA leave against the employee's wishes does not, in and of itself, violate the FMLA"); *Harvender v. Norton Co.,* No. 96-CV-653, 1997 U.S. Dist. LEXIS 21467 (N.D.N.Y. Dec. 15, 1997) (plaintiff's statements that she did not want to go on FMLA leave were irrelevant where she provided her employer with a doctor's note stating she could not perform an essential function of her job due to her health condition). Here, Ms. McManus did not exhaust her FMLA leave and cannot complain of being forced to use FMLA leave during the time she was returned effectively under "light duty." Because no reasonable jury could find interference on this record, summary judgment must be entered.

        D.      *Ms. McManus was not Constructively Discharged for Utilizing FMLA Leave.*

Retaliation claims under the FMLA require an employee to prove that (1) the employee engaged in statutorily protected activity; (2) the employer subjected her to an adverse action; and (3) the protected activity caused the adverse action. *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). St. Mary's argues that Ms. McManus waived any FMLA retaliation claim, but she alleges in her complaint that "[she] was constructively discharged from her employment with Defendant on September 18, 2017." ECF 1 ¶ 24. This circuit has considered a constructive discharge under a retaliation theory. *Tarpley v. City Colls. of Chi.,* 752 F. App'x 336, 346 (7th Cir. 2018).

In *Tarpley,* this circuit clarified the standard for proving a constructive discharge claim under the FMLA. To survive summary judgment, Ms. McManus must show that she left her employment

because it was "simply intolerable." *Id.*; *accord McPherson v. City of Waukegan*, 379 F.3d 430, 440 (7th Cir. 2004). Conditions for a constructive discharge are "even more egregious than the high standard for hostile work environment claims, because, in the ordinary case, an employee is expected to remain employed while seeking redress." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007) (citation omitted). To establish that she suffered a constructive discharge, the plaintiff "must not only demonstrate that a hostile work environment existed but also that the abusive working environment was so intolerable that her resignation was an appropriate response." *Tarpley,* 752 F. App'x at 347.

None of Ms. McManus' allegations rises to this level of hostile work environment. First, she claims that she was subjected to two threatening greeting cards that were mailed to her residence. ECF 26 at 22. These letters were sent to her home and cannot reasonably be attributed to Saint Mary's on this record. As the security department told her, the letters were not under the college's jurisdiction.

Second, she claims that Saint Mary's "steered [Ms.] McManus into an inferior position." ECF 26 at 24. But in reality, Saint Mary's endeavored to accommodate Ms. McManus' concerns with returning to the IT department. This cannot be said to constitute an "intolerable" workplace, but an accommodating one.

Third, Ms. McManus says her name had been changed to the term "nonce" in the online directory, which apparently has two different meanings. The IT department intended the word to act as a placeholder in the college's online database so viewers could not find two accounts for Ms. McManus. ECF 25-3 at 237. Ms. McManus believed the word to be offensive, as one variation of its meaning (in the United Kingdom) is "registered sex offender." ECF 26 at 24. When Ms. McManus reported this to Saint Mary's, the college immediately removed the term. Again, this does not rise to the level of constructive discharge, especially since Saint Mary's was responsive and immediately removed the term. *See Porter v. Erie Foods Int'l, Inc.,* 576 F.3d 629, 636 (7th Cir. 2009) ("the employer

17

can avoid liability for coworker harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring") (quotations omitted).

Constructive discharge claims also require the employee to prove that the employer subjected her to an adverse action—an action that "would dissuade a reasonable employee from exercising his rights under the FMLA." *Cole v. Illinois,* 562 F.3d 812, 816 (7th Cir. 2009). For an employer's action to be considered "materially adverse," it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Nagle v. Vill. of Calumet Park,* 554 F.3d 1106, 1120 (7th Cir. 2009) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir. 1993)); *James,* 707 F.3d at 782 ("[employer's] 'refusal' to reinstate [employee] after the submission of his . . . doctor's note is not a materially adverse employment action . . . [because] he submitted a doctor's note releasing him to return to work on 'light duty'"). Ms. McManus has not adduced evidence from which a reasonable jury could identify any materially adverse action taken by Saint Mary's that amounted to a constructive discharge. Thus, summary judgment for Saint Mary's is appropriate on this claim.

## CONCLUSION

When Ms. McManus requested FMLA leave, Saint Mary's provided her the statutorily required notice and thereafter granted all her requested leave. She was not entitled to immediate reinstatement upon her return from FMLA leave due to her restrictions. Accordingly, the court GRANTS Saint Mary's motion for summary judgment (ECF 24), thus terminating the case.

SO ORDERED.

February 4, 2020  *s/ Damon R. Leichty*
　　　　　　　　　　　　　　　　　　　　Judge, United States District Court